**THIRD DIVISION**
**MILLER, P. J.,**
**BOGGS and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 5, 2013**

# In the Court of Appeals of Georgia

A12A2109. HANEY et al. v. CAMP.

BOGGS, Judge.

Brenda Haney and Ronald Womack, as executor and co-executor of the estate of Rachel Kenerly (hereinafter "the Executors"), appeal from a trial court order denying their motion for sanctions and request for attorney fees after they successfully moved to enforce a consent order against Carolyn Camp. Because the trial court issued inconsistent rulings with respect to the Executors' request for attorney fees pursuant to the consent order, and applied the incorrect standard in denying the Executors' request for attorney fees pursuant to OCGA § 9-15-14 (a) and (b), we vacate the trial court's order and remand this case for further proceedings consistent with this opinion.

The record reveals that litigation between Camp and Brenda Haney, personally and as executor of the estate of Rachel Kenerly, and others, was resolved in a consent order entered in December 2009, which provided that Camp "dismisses her claims against all parties with prejudice" and "waives and releases any and all claims against the Estate or the Executors except in the enforcement of this Order," and required the estate to convey certain real property to Camp.

In October 2010, however, Camp filed a "Petition for Contempt and for Damages" alleging that the Executors breached their fiduciary duty to preserve the property conveyed to her pursuant to the consent order. Camp complained that the Executors allowed waste of the property and the removal of fixtures, reducing the property's market value, and that the Executors "knew or should have known" of the waste and neglect at the time the property was transferred to Camp. Camp sought "an offset against amounts due and payable to" the Executors.

The Executors moved to dismiss Camp's petition and simultaneously filed an answer and a counterclaim to enforce the consent order. Following a hearing, the trial court denied the Executors' motion to dismiss.

After engaging in some discovery, the Executors moved for summary judgment on both Camp's petition for contempt and their counterclaim to enforce the consent

order. In their motion, the Executors requested "an award of attorney[] fees," and in their brief in support of the motion they requested "that attorney[] fees be awarded as required under the Consent Order."

About a month after the Executors filed their motion for summary judgment, Camp filed an affidavit that the Executors claimed directly contradicted her earlier deposition testimony concerning whether she was aware of the appraised value of the property prior to settlement and whether she relied on that value in agreeing to settle.[1] As a result, the Executors immediately filed a motion for sanctions in which they requested attorney fees pursuant to OCGA § 9-15-14, and also requested the court to "enter an Order awarding attorney[ ] fees and costs in defending this litigation, in addition to other sanctions."

The trial court made no ruling on the motion for sanctions, but did hold a hearing in February 2012 on the Executors' motion for summary judgment. The court granted the motion, finding that the consent order barred Camp's claim because, pursuant to the order, Camp waived and released any and all claims against the Executors and took the property "as is." The court found further that Camp's fraud

[1]In this affidavit, Camp claimed, inter alia, that she was fraudulently induced into agreeing to the consent order.

3

claim failed because she "'could have learned the truth of the matter'" and made no effort to inspect the property or determine its value until after the consent order was entered. While the court made no specific ruling regarding attorney fees, it granted the Executors' motion for summary judgment.

Fourteen days later, the trial court entered a rule nisi setting a hearing on the Executors' earlier-filed "counterclaim for attorney's fees and motion for sanctions" (in which the Executors sought attorney fees pursuant to OCGA § 9-15-14). At the hearing, the Executors again pointed to the provision of the consent order requiring the court to award attorney fees incurred by a party seeking to enforce the consent order. Following the argument of counsel, the court concluded:

> I have no problem with the nature of the amount of attorney's fees you've turned in and the backing you have for it. I have no problem with that at all . . . . I don't know what it is about this case but everybody seems to be intent on continuing to kick a hornets' nest both back and forth. It's got to end somewhere. And I don't doubt that some of this is probably justified. In fact, most of it maybe, but still, I don't - - I can't imagine that [Camp] did this totally in bad faith. She did this because she felt like she'd been misled. I don't know whether that's anybody's fault.

And I don't - - I agree with you that she had no claim. That's why I granted the [summary judgment] motion. But his explanation of it makes sense in terms of what he was told and then what he told her.

So, relying on actually having seen the appraisal is one thing, but relying on what is, I guess, a hearsay description of an appraisal, is something else.

So, the short answer is, I don't think it's done totally in bad faith. I don't think it's done totally for frivolous reasons, even though I've ruled against the claim. And the short answer is, I'm not going to make an award of attorney[ ] fees.

The following colloquy then took place between the court and the Executors' counsel:

[Executors' counsel]:     Despite the fact that the Consent Order says that the Court should award - -

The Court:   (Interposing) I know.

[Executors' counsel]:     - - attorney's fees?

The Court:   Yeah. Anything else? Somewhere it's got to end.

The court issued a very brief final order summarily denying the Executors' motion for "Sanctions and for Attorney[ ] Fees." It is from this order that the Executors appeal.

5

1. The Executors contend that the trial court erred in denying attorney fees as required under the consent order. The consent order provided: "The Court *shall* award reasonable attorney[ ] fees and costs incurred by any party seeking to enforce any provision herein." (Emphasis supplied.) There is no dispute that the Executors sought to enforce the consent order through their answer and counterclaim to Camp's petition for contempt. While the trial court granted the Executors' motion for summary judgment in which it requested attorney fees pursuant to the consent order, the court appeared to deny attorney fees on this ground in its colloquy with the Executors' counsel at the hearing on the motion for sanctions. Because of the court's inconsistent actions, we cannot properly consider whether the court erred in denying the Executors' request. We therefore remand this case for the trial court to clarify its ruling with respect to the Executors' request for attorney fees pursuant to the consent order.

2. The Executors contend that the trial court erred in denying their request for attorney fees pursuant to OCGA § 9-15-14 (a) and (b). OCGA § 9-15-14 (a) provides:

> In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation *shall* be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there *existed such a complete*

6

*absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim*, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

(Emphasis supplied.) OCGA § 9-15-14 (a) therefore provides for a mandatory award upon a finding of the absence of any justiciable issue of law or fact. *Haggard v. Bd. of Regents*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987).

Subsection (b) provides:

The court *may* assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, *that lacked substantial justification or that the action*, or any part thereof, *was interposed for delay or harassment*, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act." As used in this Code section, *"lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious*.

(Emphasis supplied.) The award of attorney fees pursuant to this subsection (b) is discretionary based upon a finding that a party lacked substantial justification or that the action was interposed for delay or harassment. *Haggard*, supra.

Although the court stated that it did not believe that Camp filed her petition "totally for frivolous reasons," it repeatedly stated that it found that Camp did not act in bad faith in filing her petition. But a finding of bad faith, required to determine an award of expenses of litigation pursuant to OCGA § 13-6-11, for example, is not required for an award of attorney fees pursuant to OCGA § 9-15-14 (a) and (b). See *Haggard*, supra, 257 Ga. at 527 (4) (c) n.3.While the trial court is not required to make findings of fact in *denying* an award of attorney fees, see *Evers v. Evers*, 277 Ga. 132, 132-133 (2) (587 SE2d 22) (2003), it appears from the trial court's oral ruling here that it applied an incorrect legal standard for analyzing the award of attorney fees pursuant to OCGA § 9-15-14 (a) and (b). See, e. g., *The Lamar Co. v. State of Georgia*, 256 Ga. App. 524, 525-526 (2) (568 SE2d 752) (2002) (case remanded in part because trial court incorrectly believed bad faith was prerequisite for attorney fees pursuant to OCGA § 9-15-14); *The Claxton Enterprise v. Evans County Bd. of Commrs.*, 249 Ga. App. 870, 877-878 (5) (549 SE2d 830) (2001) (court awarded fees simply because party was in violation of Georgia Open Meetings Act;

award vacated and case remanded for court to determine if party acted "without substantial justification" pursuant to OCGA § 50-14-5 (b)); cf. *Coffey v. Fayette County*, 279 Ga. 111, 112 (610 SE2d 41) (2005) (remand required where trial court applied incorrect legal standard in denying request for injunctive relief).

Therefore, in addition to our holding in Division 1 remanding this case for clarification of the trial court's ruling with regard to attorney fees pursuant to the consent order, we also remand this case for the court to apply the proper standards to determine if the Executors are entitled to an award of attorney fees pursuant to OCGA § 9-15-14 (a) and (b).

*Judgment vacated and case remanded. Miller, P. J., and Ray, J., concur.*